DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant-Cross Appellee, Shawna K. Doerfler (Ms. Doerfler), appeals the decision of the Wayne County Domestic Relations Court subsequent to a motions hearing in divorce proceedings between Ms. Doerfler and her former husband, Appellee-Cross Appellant Brad Doerfler (Mr. Doerfler). In their respective appeals, Ms. Doerfler raises three assignments of error and Mr. Doerfler raises two. The assignments of error relate to contempt charges against Ms. Doerfler for relocating with the couple's children outside of the state of Ohio, as well as to issues of child custody and child support.
 {¶ 2} The divorce between Mr. and Ms. Doerfler was final in November, 1998. The parties accepted a shared parenting plan ("SPP") that the court adopted on December 18, 1998. At that time, both parties lived in Ohio. The SPP governed the parties' custody and visitation of their four sons. Ms. Doerfler was designated the residential parent and Mr. Doerfler had regularly scheduled visitation with his sons. The SPP had the following provision, which is relevant to this appeal:
 "1. The Mother shall be the residential parent for the minor children, and the children shall reside with the residential parent except for those times which the children are residing with the non-residential parent. Neither party shall permanently remove the children from the State of Ohio without an Order from a Court having jurisdiction over the children establishing visitation rights and transportation responsibilities."
 {¶ 3} After several motions for contempt from both parties over custody and child support issues as well as requests by Ms. Doerfler to move with the children to Kansas, the court issued an order on August 22, 2001, clarifying the SPP and addressing events that had occurred since the SPP was signed. In one provision, the court ordered that "if the plaintiff plans on moving to the State of Kansas she shall provide 90 days advance notice of her intent to relocate." After this order, Mr. Doerfler filed a motion to terminate the SPP and to designate him the residential parent. A guardian ad litem (GAL) was appointed to determine the best interests of the children.
 {¶ 4} On June 10, 2004, Ms. Doerfler filed a notice of her intent to relocate to Kansas. Approximately sixty days later, on August 8, 2004, she made the move with her sons without any prior approval of the court and without waiting ninety days as required by the court. The GAL had not been able to complete her observation of the children and the parents before this move. Mr. Doerfler immediately filed a motion for contempt, which was one of the filings under consideration by the trial court during the proceedings from which this appeal is brought.
 {¶ 5} After Ms. Doerfler moved, there were further problems with visitation, particularly with respect to transportation of the children. Mr. and Ms. Doerfler could seldom agree on the means of transportation, the party responsible for paying to transport the children, or what constituted a fair halfway point between Kansas and Ohio. The GAL included this difficulty in her report. Given the fact that Ms. Doerfler had moved in violation of the court's order and instructions, and that Ms. Doerfler was often uncooperative regarding Mr. Doerfler's companionship and visitation with the children, the GAL ultimately concluded that it was in the best interests of the children for Mr. Doerfler to be the residential parent.
 {¶ 6} The magistrate's report and proposed decision, filed August 23, 2005, acknowledged the GAL's report. The magistrate noted that it was a difficult decision, but recommended that Ms. Doerfler remain the residential parent for reasons that will be discussed herein. The magistrate's report also recommended that the court hold Ms. Doerfler in contempt for violating the SPP's provisions with respect to out-of-state moves, and for violating the court's clear order requiring ninety days' notice prior to a move. While the magistrate thought that a thirty-day sentence for each of the violations was appropriate, he suggested that the sentences be suspended conditioned upon Ms. Doerfler's future cooperation with the court's orders. Further, the magistrate recommended that Ms. Doerfler pay Mr. Doerfler's travel expenses for his visits to Kansas to see the boys, and that the court adjust Mr. Doerfler's child support payments to facilitate these reimbursements. Finally, it recommended that the court deny Ms. Doerfler's motion for contempt against Mr. Doerfler for alleged delinquency in child support payments because Mr. Doerfler had paid any arrearage.
 {¶ 7} On February 14, 2006, after the transcript of the hearing had been filed with the court, the trial court issued its decision. It accepted the factual findings in the magistrate's report and the recommendations that Ms. Doerfler pay Mr. Doerfler's travel expenses, and adjusted Mr. Doerfler's child support payments accordingly. However, although it accepted the recommendation that Ms. Doerfler remain the residential parent, it arrived at that determination in a much different manner than had the magistrate. In addition, the trial court did not suspend the sentence for its finding that Ms. Doerfler was in contempt. It imposed two thirty-day sentences, one for the violation of the SPP and one for the violation of the ninety-day notice requirement, and set a date for Ms. Doerfler to report to the Wayne County Jail. The parties take issue with each of these determinations by the trial court.
 {¶ 8} Ms. Doerfler raises three assignments of error. We will first address the second and third assignments.
 MS. DOERFLER'S SECOND ASSIGNMENT OF ERROR "The trial court erred in granting [Mr. Doerfler] a judgment for travel expenses and in crediting him against his obligation to support the children."
 MS. DOERFLER'S THIRD ASSIGNMENT OF ERROR "The trial court erred in denying [Ms. Doerfler's] motion for contempt because [Mr. Doerfler] did not show cause why he should not be found in contempt as of the time of her motion."
 {¶ 9} Ms. Doerfler argues that the trial court erred in adjusting child support to reimburse Mr. Doerfler for traveling expenses, and in not finding Mr. Doerfler in contempt of court for his alleged delinquency in child support payments.
 {¶ 10} The magistrate recommended in his report that Mr. Doerfler not be compelled to show cause and not be held in contempt because he had remedied the arrearages in child support by the time the hearing occurred. Although Ms. Doerfler argued that he was intentionally waiting until hearings before the court to pay the balance of the child support, the magistrate found that he only owed $99.27 when she filed her motion for contempt, and that was not enough to justify finding him in contempt of court. The magistrate also found that Ms. Doerfler should be responsible for Mr. Doerfler's travel expenses, since her move had necessitated his travels to Kansas. In order to facilitate these payments, the magistrate recommended adjusting Mr. Doerfler's child support payments downward. Hearing no objection, the trial court adopted both the recommendation that Mr. Doerfler not be held in contempt and the recommendation that the child support payments be decreased to compensate for Mr. Doerfler's travel expenses.
 {¶ 11} Civ. R. 53(D)(3)(b)(iv) provides as follows:
 "Waiver of right to assign adoption by court as error on appeal. Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ. R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ. R. 53(D)(3)(b)."
At no time did Ms. Doerfler object to the magistrate's report and recommendations. Ms. Doerfler does not make the claim that any decision by the trial court constitutes plain error, nor do we find that these decisions were plain error. Ms. Doerfler's second and third assignments of error are waived.
 MS. DOERFLER'S FIRST ASSIGNMENT OF ERROR "The trial court erred in finding [Ms. Doerfler] in criminal contempt, without evidence of intent to defy the court or an imminent threat to the administration of justice."
 {¶ 12} Ms. Doerfler claims that the trial court erred in finding her in contempt of court and imposing a jail sentence because, as she claims, there was no evidence of intent to defy the court, which is an element of criminal contempt. Additionally, in Ms. Doerfler's argument, she raises concerns about her right to due process. We affirm the trial court's decision.
 {¶ 13} Ms. Doerfler violated two separate orders in relocating as she did. First, she violated the SPP, which was agreed to by the parties and accepted by the court. Second, she violated an order — put on by the court after she had requested to move to Kansas and her request was denied — that she allow ninety days after notice of her intent to relocate before relocating. The magistrate recommended in his report that she be found in contempt for those two separate violations, that the sentence be thirty days in jail for each violation, and that each sentence be suspended subject to her future compliance with court orders. Although the magistrate did not specifically identify the type of contempt, this finding appears to be one of civil contempt. SeeHicks v. Feiock (1988), 485 U.S. 624, 108 S.Ct. 1423. The trial court accepted the magistrate's factual findings and his recommendation that Ms. Doerfler be held in contempt, but it did not suspend the two thirty-day jail terms.
 {¶ 14} We must first address the issue of waiver, since we have found that Ms. Doerfler's other assignments of error were waived and at no time did she object to the magistrate's civil contempt finding. We find that this issue was not waived. Ms. Doerfler argues in her appellate brief that the civil contempt finding "did not affect her," because it did not order immediate incarceration, but rather it provided that she should comply with the future orders of the court. She presumably intended to comply with the future orders of the court, and, because she did not face an imminent deprivation of liberty, she found no reason to object. We therefore find that we may proceed to address this issue on the merits.
 {¶ 15} A trial court's finding of contempt will not be disturbed on appeal absent an abuse of discretion. State ex rel. Delco Moraine Div.,Gen. Motors Corp. v. Indus. Comm. (1990), 48 Ohio St.3d 43, 44,549 N.E.2d 162. An abuse of discretion is more than an error of law or judgment, but rather, it is a finding that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Under this standard of review, an appellate court may not merely substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621, 614 N.E.2d 748.
 {¶ 16} A contemptuous act can either be performed in the presence of the court or outside its presence. If the act was committed outside the presence of the court, as occurred in this case when Ms. Doerfler violated the court's orders by moving out-of-state, the contempt proceeding is for indirect contempt. Adams v. Epperly (1985),27 Ohio App.3d 51, 52, 499 N.E.2d 374. Contempt may be classified as either civil or criminal; if it is civil, then the offending party is entitled to only those due process protections afforded parties in civil actions, whereas, if it is criminal, the party is entitled to the due process protections normally afforded defendants in criminal actions. Id, citingSchrader v. Huff (1983), 8 Ohio App.3d 111, 456 N.E.2d 587. When a court is asked to determine whether contempt is civil or criminal, the distinguishing factor is not the type of punishment imposed, but the
 "'character and purpose of the punishment. * * * Punishment is remedial or coercive and for the benefit of the complainant in civil contempt. Prison sentences are conditional. The contemnor is said to carry the keys of his prison in his own pocket, * * * since he will be freed if he agrees to do as ordered. Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence. Such imprisonment operates not as a remedy coercive in its nature but as a punishment for the completed act of disobedience, and to vindicate the authority of the law and the court. * * * Therefore, to determine if the sanctions in [a cause] were criminal or civil in nature, it is necessary to determine the purpose behind each sanction: was it to coerce the appellees to obey the [court order], or was it to punish them for past violations?'" Schlessner v. Schlessner (May 9, 2001), 9th Dist. No. 20291, at *2, quoting Adams, 27 Ohio App.3d at 52, quoting Brown v. Executive 2000, Inc. (1980), 64 Ohio St.2d 250, 253-54. (Omissions original).
 {¶ 17} In this case, the contempt sanctions recommended by the magistrate were civil in nature. See Hicks, supra. Ms. Doerfler could stay out of jail by following the future orders of the court. However, the trial court's sanctions were clearly criminal, in that there was no opportunity for Ms. Doerfler to purge, and the jail time was meant to punish past actions more than to affect future behavior. The question then becomes whether the trial court could reject the magistrate's recommendation of civil contempt and impose criminal penalties on Ms. Doerfler without any further proceedings. We find that it could, in the specific circumstances of this case.
 {¶ 18} This court does not dispute the fact that criminal contempt is a different creature from civil contempt, and that the rights afforded to a defendant in criminal contempt proceedings are those recognized as criminal due process rights. To be found guilty of criminal contempt, a defendant must be found guilty beyond a reasonable doubt.Schlessner, at *3, citing Brown, at 252. The finding must be based upon sworn testimony, not an informal discussion of which there is no record.Schlessner, at *3, citing Bedford v. Lacey (1985), 30 Ohio App.3d 1, 7,506 N.E.2d 224 (Markus, J., concurring). In addition, he has the right to be present at the contempt hearing and to present witnesses.Schlessner, at *3, citing Adams, at 53. He also has the right to testify and to be represented by counsel. Schlessner, at *3, citing State v.Felson (Mar. 23, 2001), 1st Dist. No. C-000470. The charges against him must be proven beyond a reasonable doubt. See Hicks, at 632. Finally, the defendant has a right to proper notice of the hearing.
 {¶ 19} R.C. 2705.031 governs contempt imposed for failure to comply with a visitation order or similar order of the domestic relations court. As Ms. Doerfler notes in her brief, the statute reads, in pertinent part, as follows:
 "In any contempt action initiated pursuant to division (B) of this section, the accused shall appear upon the summons and order to appear that is issued by the court. The summons shall include all of the following:
 "(1) Notice that failure to appear may result in the issuance of an order of arrest, and in cases involving alleged failure to pay support, the issuance of an order for the payment of support by withholding an amount from the personal earnings of the accused or by withholding or deducting an amount from some other asset of the accused;
 "(2) Notice that the accused has a right to counsel, and that if indigent, the accused must apply for a public defender or court appointed counsel within three business days after receipt of the summons;
 "(3) Notice that the court may refuse to grant a continuance at the time of the hearing for the purpose of the accused obtaining counsel, if the accused fails to make a good faith effort to retain counsel or to obtain a public defender;
 "(4) Notice of the potential penalties that could be imposed upon the accused, if the accused is found guilty of contempt for failure to pay support or for a failure to comply with, or an interference with, a parenting time or visitation order or decree."
 {¶ 20} Ms. Doerfler cites a series of cases to support the proposition that the aforementioned rights must be afforded her in order for a criminal contempt sanction to be imposed. Among them, she cites In reContempt of Common Pleas Court (1972), 30 Ohio St.2d 182,283 N.E.2d 126, which states that "[b]ecause contempt proceedings affect personal liberty, the proceedings and the statutes governing them must be strictly construed." Id. at 187, citing State v. Local Union 5760 etc.(1961), 172 Ohio St. 75, 83, 173 N.E.2d 331. However, the factual scenario in In re Contempt was vastly different from the situation before this court. In In re Contempt, the Court was examining a statute under which the Probate Court arguably did not have power to impose contempt sanctions upon employees of the common pleas court who did not accept the next pay scheme adopted by the probate court and therefore did not pay the probate court employees the increased wages. The Supreme Court examined the statute under which the probate court was acting and determined that, under that statute, the contempt power could only be exercised in situations not dealing with the payment of money. The Court strictly construed the statute providing for the imposition of contempt sanctions, and found that the probate court had acted in violation of the statute in finding the employees in contempt.
 {¶ 21} Clearly, in this case, the court has the power to impose criminal contempt sanctions should it determine that such sanctions are called for. See R.C. 2705.031. We must then look to the process afforded Ms. Doerfler.
 {¶ 22} Ms. Doerfler's attorney received several notices that "all remaining motions" would be argued and decided at the hearing that ultimately took place on July 20, 2005. Although she did not receive separate notice and warning that she could face criminal penalties, she appeared at the hearing. The hearing was on the record, and this court has been provided with a transcript. She was represented by counsel. She testified at the hearing, and also called witnesses on her behalf. She cross-examined the witnesses called on her husband's behalf. All of the rights to be afforded a criminal defendant were afforded Ms. Doerfler with the exception of particular notice of the possibility that the court would find her in criminal contempt.
 {¶ 23} Ms. Doerfler claims that the element of intent required to prove criminal contempt was not proven beyond a reasonable doubt, because the court did not outline its findings. Contrary to Ms. Doerfler's assertions, the trial judge was under no obligation to outline the elements of contempt and his support for finding that each element was satisfied. He found, based on a lengthy hearing transcript, that she had violated the orders of court and in so doing had committed acts that amounted to criminal contempt. The transcript does support the court's finding in light of testimony by Ms. Doerfler that, while what she did may have constituted contempt, she did what was in the best interests of her children. Her actions prior to the hearing demonstrated a disregard for the authority of the court, and supported a finding beyond a reasonable doubt that she intended to defy the court's orders.
 {¶ 24} It is not clear what Appellant would have done differently had she been given the notice she now argues she should have received. Her rights to a hearing, to counsel, to the presentation of evidence and to the examination of witnesses were all preserved at the hearing on July 20, 2005. The fact that she did not receive separate notice, or that she did not receive a specific warning from the trial court that she could face criminal contempt sanctions, does not change the fact that her fundamental rights were preserved. She was able to mount a defense to the contempt motion filed by Mr. Doerfler, and the facts she presented would presumably not be any different were she given different information about the nature of the proceedings.
 {¶ 25} We affirm the trial court's judgment finding Ms. Doerfler in contempt and sentencing her to two thirty-day terms in jail. Ms. Doerfler's first assignment of error is overruled.
 MR. DOERFLER'S FIRST ASSIGNMENT OF ERROR "The trial court's decision continuing the shared parenting plan of the parties, modifying the companionship time of [Mr. Doerfler], and denying [Mr. Doerfler's] motion to designate him as residential parent is an abuse of discretion."
 {¶ 26} Mr. Doerfler argues that the trial court abused its discretion in refusing to terminate the SPP and designate him residential parent, as well as in modifying his companionship time with his sons. Mr. Doerfler properly objected to the magistrate's report and recommendations that Ms. Doerfler remain the residential parent, and now appeals the trial court's decision.
 {¶ 27} Modification of parental rights and responsibilities under R.C. 3109.04(E)(1)(a) is only permitted when: (1) there has been a material change in circumstances of either the child, or of either parent; (2) when it is certain to serve the best interest of the child; and (3) when one of the following applies:
 "(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
 "(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." R.C. 3109.04(E)(1)(a). See, also, Smith v. Smith (Feb. 7, 2001), 9th Dist. No. 00CA007619; and Davis v. Flickinger (1997), 77 Ohio St.3d 415, 416-17, 674 N.E.2d 1159 (holding that a change in circumstances under R.C. 3109.04(E)(1)(a) must be a "change of substance," but need not be a "substantial" change).
 {¶ 28} A court may determine that a modification is in the best interests of the children, but it must first find that a change of circumstances has occurred. R.C. 3109.04 reads, in pertinent part, as follows:
 "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child." R.C. 3109.04(E)(1)(a).
The statute clearly states that the court must consider the circumstances of both parents, as well as those of the child.
 {¶ 29} A trial court's determination regarding whether a change in circumstances has occurred under R.C. 3109.04(E)(1)(a) will not be disturbed absent an abuse of discretion. Davis, at 416. The Ohio Supreme Court has noted that "[t]he discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." Miller v. Miller (1988),37 Ohio St.3d 71, 74, 523 N.E.2d 846.
 {¶ 30} In this case, the magistrate heard testimony from the GAL, both parties, and other witnesses called by the parties. In his report, the magistrate discussed the difficulty of making a decision given the determinations of the GAL, who said that it was in the children's best interest that the residential parent be Mr. Doerfler. The magistrate agreed that the GAL's assessment was probably accurate, and that he would probably have followed it had this been an initial placement of the children. However, he concluded that a change of circumstances had not occurred, and that therefore he could not conduct a best interests determination, and recommended that Ms. Doerfler remain the residential parent.
 {¶ 31} The trial court accepted all of the magistrate's factual findings, but found that a change of circumstances had occurred because of Ms. Doerfler's interference with Mr. Doerfler's visitation of the children. It based its finding on "evidence of the mother's unwillingness to properly facilitate companionship rights with the father and her decision to relocate without notice and without considering the impact on the relationship of the children with their father."
 {¶ 32} While the courts may consider the interruption of visitation as a factor in deciding whether a change of circumstances has occurred, the interruption alone is generally not sufficient. This court has previously held, in accordance with the Ohio Supreme Court, that the overall change, all factors considered, must be a change of substance, but it need not be a substantial change. In re Surdel, 9th Dist. No. 02CA007980, 2002-Ohio-4529, at ¶ 14; see, also, Davis, at 418. In other words, the change must be "material." In re Surdel, at ¶ 14.
 {¶ 33} The trial court decided that Ms. Doerfler's actions did constitute a material change in that, by moving to Kansas, she had both completely changed the children's environment and substantially deprived Mr. Doerfler of his right to frequent companionship and visition. It is well settled under Ohio law that "a custodial parent's interference with visitation by a noncustodial parent may be considered as part of a `change of circumstances' which would allow for modification of custody." Holm v. Smilowitz (1992), 83 Ohio App.3d 757, 773,615 N.E.2d 1047. This court has previously acknowledged that "a change in residence of the custodial parent is a change of circumstances that may justify modification of the allocation of parental rights and responsibilities under R.C. 3901.04(E)(1)(a)." Riggle v. Riggle (Sept. 26, 2001), 9th Dist. No. 01CA0012, at *2. The trial court clearly had support for its decision that a change of circumstances existed.
 {¶ 34} Once it had so determined, the trial court found that it was in the best interests of the children to remain with Ms. Doerfler as the residential parent. It made its decision based upon the following factors: "(1) the wishes of the children; (2) [Ms. Doerfler] has been the primary caretaker over the years and the children have a strong bond with her; (3) [Mr. Doerfler] has not exercised full visitation with the children over the years."
 {¶ 35} In making a best interests determination, the trial court is guided by a non-exclusive list of factors set forth in R.C. 3109.04(F)(1). Although the statute provides that the court should consider "all relevant factors," it specifically lists factors such as the wishes of the parents, the wishes of the children, and the children's adjustment to the current environment.
 {¶ 36} While the trial court did consider factors outside of the list in R.C. 3109.04(F)(1), it clearly thought those factors were relevant, and was within its discretion to do so. We find that the trial court did not abuse its discretion in finding that Ms. Doerfler should remain the residential parent. Although she has not always been cooperative in arranging visitation for Mr. Doerfler, it is also true that Mr. Doerfler has not been faultless in the miscommunications, and the record reflects that he has failed to exercise his visitation rights to their fullest. Furthermore, the hearing transcript reflects that children told the magistrate that they were happy in their new situation, and that they had good grades in their new school and were very involved in the community.
 {¶ 37} The standard for this court's finding of an abuse of discretion in the trial court is very high, and Mr. Doerfler has been unable to satisfy this court that the standard has been met. We note that Ms. Doerfler's violation of the trial court's orders has been dealt with by the imposition of a jail sentence for contempt. Since the move, Ms. Doerfler has encouraged the children to stay in contact with their father by telephone and email. She has helped to provide transportation for the children so that they can visit their father.
 {¶ 38} Mr. Doerfler has attempted to argue that the magistrate found that it was not in the children's best interests to remain with Ms. Doerfler, and that, given that finding, Mr. Doerfler should have been designated by the trial court as the residential parent. The magistrate did opine that the best interest determination would probably be in favor of Mr. Doerfler, if he were to decide the issue. However, he never decided the issue because he had determined that there was not a change of circumstances. Therefore, Mr. Doerfler's reliance upon the magistrate's best interests "decision" is misplaced.
 {¶ 39} Similarly, the trial court did not abuse its discretion in deciding that Mr. Doerfler's companionship time should be altered. Once the trial court had determined that there was no change in circumstances and that, therefore, it could not alter the residential parent designation, it granted Ms. Doerfler's request to move to Kansas and to take the children with her. Clearly, if Ms. Doerfler is living in Kansas, the companionship schedule originally set forth in the SPP is no longer feasible. The trial court decided to modify the schedule such that Mr. Doerfler would still see the children as frequently as possible on their breaks from school, in addition to some weekends, to compensate for the fact that he could no longer see them on weekday evenings. We find that the trial court was within its discretion in so deciding.
 {¶ 40} We find that the trial court did not abuse its discretion in deciding that Ms. Doerfler should remain the residential parent for the children, and in modifying Mr. Doerfler's visitation and companionship to accommodate the children's residence in Kansas. Ohio case law supports the reasoning of the trial court, and its decision is reasonably based upon the facts in the record from the July 20, 2005 hearing. Mr. Doerfler's first assignment of error is overruled.
 MR. DOERFLER'S SECOND ASSIGNMENT OF ERROR "The trial court's decision continuing the shared parenting plan of the parties, modifying the companionship time of [Mr. Doerfler], and denying [Mr. Doerfler's] motion to designate him as residential parent, is against the manifest weight of the evidence."
 {¶ 41} Mr. Doerfler argues that the trial court's decisions regarding his companionship time with his children, the continuation of the SPP and the trial court's refusal to designate him the residential parent were against the manifest weight of the evidence. We disagree.
 {¶ 42} This Court applies the same manifest weight analysis in both criminal and civil cases. Ray v. Vansickle (Oct. 14, 1998), 9th Dist. Nos. 97CA006897 / 97CA006907, at *1. This requires the appellate court to "'review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed.'" Id., quoting State v. Otten (1986),33 Ohio App.3d 339, 340, 515 N.E.2d 1009.
 {¶ 43} Mr. Doerfler challenges three separate decisions of the trial court: the trial court's refusal to designate him the residential parent, its refusal to terminate the SPP, and its modification of Mr. Doerfler's companionship time. In our discussion of Mr. Doerfler's first assignment of error, we have enumerated many of the facts that were before the trial court as it made its decisions in this case. We find that those facts support the recommendations made by the magistrate and the decisions reached by the trial court. It is clear that the parties experience tension regarding Mr. Doerfler's visitation with the children. However, Ms. Doerfler has not attempted to hide the children from Mr. Doerfler, and the court did not find that her reasons for moving were false, or that she moved with the intention of keeping the children from him.
 {¶ 44} We find that the trial court's decision is supported by the facts before the court and is not contrary to the manifest weight of the evidence. Mr. Doerfler's second assignment of error is overruled.
 {¶ 45} Ms. Doerfler's second and third assignments of error are waived. Her first assignment is overruled. Mr. Doerfler's two assignments of error are overruled. The decisions of the trial court are affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant/Cross-Appellee.
LYNN C. SLABY FOR THE COURT
BOYLE, J., CONCURS